680 N.E.2d 441 (1997)
288 Ill. App.3d 348
223 Ill.Dec. 708
Ray NOWAKOWSKI et al., Plaintiffs-Appellants,
v.
AMERICAN RED BALL TRANSIT COMPANY, INC., et al., Defendants-Appellees,
(American Red Ball Transit Company, Inc., Third-Party Plaintiff and Third-Party Defendant; Arrow Moving and Storage Company, Third-Party Defendant and Third-Party Plaintiff).
No. 2-96-0838.
Appellate Court of Illinois, Second District.
May 16, 1997.
*442 John T. Jursich, North Chicago, for Lucy Nowakowski, Ray Nowakowski.
John F. Horvath, Duane C. Weaver, Horvath & Lieber, P.C., Chicago, for American Red Ball Transit Co., Inc.
Thomas A. McDonald, Erik W. Nielsen, Clausen Miller, P.C., Chicago, for Arrow Moving and Storage Co.
Justice RATHJE delivered the opinion of the court:
Plaintiffs, Ray and Lucy Nowakowski, appeal the entry of summary judgment (735 ILCS 5/2-1005(c) (West 1994)) for defendants, American Red Ball Transit Company, Inc. (Red Ball), and Arrow Moving & Storage Company (Arrow), in a suit under the Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/1 et seq. (West 1994)). The trial court ruled that the suit was barred by the Carmack Amendment to the Interstate Commerce Act (Carmack Amendment) (49 U.S.C.A. § 11707 (West 1997)), and by section 10b(1) of the Consumer Fraud Act (815 ILCS 505/10b(l) (West 1994)). On appeal, plaintiffs argue that neither the Carmack Amendment nor section 10b(1) of the Consumer Fraud Act bars a suit against an interstate motor carrier or its agent for fraudulently depriving shippers of the benefit of insurance for goods damaged in transit. We hold that, because this suit is in substance one for loss from the carrier's damage to the shippers' goods, it is preempted by the Carmack Amendment. Therefore, we affirm.
Plaintiffs' complaint alleges the following facts. Red Ball is a motor carrier engaged in interstate commerce. Plaintiffs entered into a contract with Arrow, Red Ball's agent, to ship plaintiffs' household goods from Gurnee, Illinois, to Sun Lakes, Arizona. When the parties agreed to the contract, Arrow told plaintiffs they could obtain extra insurance against breakage that might occur during the move. Relying on this representation, plaintiffs purchased extra insurance for $492.68. However, Red Ball never obtained the extra insurance or furnished plaintiffs a policy. Red Ball picked up the goods and delivered them to Sun Lakes. When plaintiffs unpacked the items, they discovered $7,500 worth of breakage. Plaintiffs made a claim for this amount, but Red Ball and Arrow denied the claim.
Plaintiffs alleged that Red Ball and Arrow committed statutory consumer fraud. They relied in part on an Interstate Commerce Commission regulation providing that, whenever a common carrier of household goods sells insurance covering loss or damage in excess of the carrier's specified liability and the carrier fails to provide the shipper with the policy or other appropriate evidence of the insurance purchased, the carrier shall be subject to full liability for any claim. See 49 C.F.R. § 1056.11(a) (1995). Plaintiffs sought $7,500 actual damages and $30,000 punitive damages. Each defendant then sought contribution or indemnity against the other for any liability to plaintiffs.
In granting defendants' summary judgment, the court held that the Carmack Amendment preempts the claims and that section 10b(l) of the Consumer Fraud Act also exempts defendants from liability under the state statute. Plaintiffs timely appealed.
Plaintiffs contend that the trial court erred in holding that the Carmack Amendment preempts their claim for consumer fraud. Plaintiffs concede that the federal statute preempts a state-law cause of action for *443 breach of contract to ship goods under a receipt or bill of lading or for negligence in the delivery of goods under such a contract. However, they assert that they are suing for fraud in the procurement of insurance rather than loss from improper shipping. Thus, they reason, their action under Illinois law is consistent with the Carmack Amendment.
We disagree. The complaint does allege that defendants failed to deliver insurance as promised. However, as plaintiffs do not deny, the sole purpose for this insurance was to compensate them for damage to the property the carrier delivered. In essence, plaintiffs are suing an interstate motor carrier (and its agent) for the carrier's negligent or improper handling of goods that the carrier delivered in interstate commerce under a receipt or bill of lading. This is precisely the type of liability for which the Carmack Amendment was intended to provide uniform federal standards, and it is well within the broad preemptive range of the statute. Plaintiffs cannot evade the scope of the federal act by denominating their cause of action as one for consumer fraud.
Courts have long recognized that, under the Carmack Amendment's comprehensive regulation of carriers' liability, "[a]lmost every detail of the subject is covered so completely that there can be no rational doubt but that Congress intended to take possession of the subject, and supersede all state regulation with reference to it." Adams Express Co. v. Croninger, 226 U.S. 491, 505-06, 33 S.Ct. 148, 152, 57 L.Ed. 314, 320 (1913). The law's preemptive force stems not only from its breadth but from its purpose: to preserve uniform national guidelines for interstate carriers' liability and thereby avoid the uncertainty that would result from a multiplicity of state standards. Rini v. United Van Lines, Inc., 104 F.3d 502, 504 (1st Cir.1997); Moffit v. Bekins Van Lines Co., 6 F.3d 305, 306-07 (5th Cir.1993); Hughes v. United Van Lines, Inc., 829 F.2d 1407, 1415 (7th Cir.1987), cert. denied 485 U.S. 913, 108 S.Ct. 1068, 99 L.Ed.2d 248 (1988); Consolidated R. Corp. v. Primary Industries Corp., 868 F.Supp. 566, 574 (S.D.N.Y.1994).
Numerous courts have applied these principles in holding that the Carmack Amendment preempts state-law based claims essentially indistinguishable from the one here. In Rini, the plaintiff obtained a jury verdict against a carrier that lost some of her goods and refused to pay for the loss. The plaintiff recovered not only under the Carmack Amendment but also under common-law theories of negligence and misrepresentation and under the state statute governing unfair and deceptive business acts.
The appellate court reversed, holding that all the state-law claims upon which the plaintiff prevailed were preempted by the Carmack Amendment. Observing that "the principal purpose of the Amendment was to achieve national uniformity in the liability assigned to carriers" (Rini, 104 F.3d at 504), the court reasoned that the federal statute necessarily applied not only to the transport of goods but the attendant claims process (Rini, 104 F.3d at 505). Thus, the court reasoned, the touchstone inquiry in each case is whether the carrier's liability is based on the loss of or damage to the goods it shipped. To allow recovery under state law where the ultimate harm is property damage or loss would ignore the long-standing rule that state statutes are preempted if they in any way enlarge the carrier's responsibility for the loss or at all affect the ground or measure of recovery. Rini, 104 F.3d at 504-05, relying on Charleston & Western Carolina Ry. Co. v. Varnville Furniture Co., 237 U.S. 597, 603, 35 S.Ct. 715, 716, 59 L.Ed. 1137, 1139 (1915).
The Rini court concluded that the plaintiff's claims under state law were preempted even though they were nominally premised on the carrier's conduct during the claims process rather than merely on the carrier's loss of her property. All these causes of action stemmed from the loss of the plaintiff's goods; this was the only injury she suffered. Rini, 104 F.3d at 506.
In Hughes, the plaintiffs' goods were damaged in transit by a fire. The plaintiffs sued not only for negligence and breach of contract but also for intentional and negligent misrepresentation in providing coverage for damage. The court held that the Carmack *444 Amendment preempted all these claims, as the federal goals of uniformity and certainty would be frustrated by allowing varying and inconsistent state causes of action for harm caused in interstate commerce. Hughes, 829 F.2d at 1412-15.
Pietro Culotta Grapes Ltd. v. Southern Pacific Transportation Co., 917 F.Supp. 713 (E.D.Cal.1996), involved allegations of both property damage and business loss from untimely shipments. The plaintiffs' state-law causes of action included breach of contract, negligence, fraud, and negligent misrepresentation; in part, they alleged that the defendants wrongfully induced them to enter the contract by making crucial representations that they knew were unlikely to be fulfilled. The court held that the Carmack Amendment preempted all the state-law causes of action for damage to the goods or delay in shipment of the goods. The court refused to distinguish between actions based solely on improper shipping and those based on carriers' preshipment conduct, observing that several other courts had repudiated such a distinction. See Culotta, 917 F.Supp. at 715-16 (and cases cited therein). Furthermore, the court reasoned that to allow the plaintiffs' state-law claims would undercut the certainty and uniformity that are the primary goals of the Carmack Amendment's national system of carrier liability. Culotta, 917 F.Supp. at 716.
In White v. United Van Lines, Inc., 758 F.Supp. 1240 (N.D.Ill.1991), the plaintiff's goods were damaged in transit. Relying in part on Hughes, the court held that the Carmack Amendment preempted plaintiff's suit for fraudulent or bad-faith breach of an insurance contract similar to the one here. As did Rini later, White simply rejected the distinction plaintiffs here attempt to draw between an action for damages to the goods themselves and one for the carrier's improper conduct in processing a claim for damages to the goods. White, 758 F.Supp. at 1243-44.
In Margetson v. United Van Lines, Inc., 785 F.Supp. 917 (D.N.M.1991), the court held that the Carmack Amendment preempted claims under state deceptive trade practices statutes even though the plaintiff alleged not only that the carrier damaged her goods but that it also deceived her about how it would store and transport the goods. The court noted that, ultimately, the plaintiff was seeking damages for the loss or injury incurred in transporting her goods interstate. Margetson, 785 F.Supp. at 920. The court also observed that allowing the plaintiff punitive damages under the state statutes would be inconsistent with the Carmack Amendment's limitation of carriers' liability to actual damages. Margetson, 785 F.Supp. at 920-21; see also Cleveland v. Beltman North American Co., 30 F.3d 373, 379 (2d Cir.1994) (punitive damages are inconsistent with Carmack Amendment).
Other courts have recognized that the Carmack Amendment is broad enough to preempt state-law claims for damages to goods shipped interstate, even when these suits are styled as ones for fraud or the violation of state consumer protection statutes. See Schultz v. Auld, 848 F.Supp. 1497, 1502-03 (D.Idaho 1993) (shipper alleged that carrier's representations about liability coverage were fraudulent and violated state consumer practices statute); United Van Lines, Inc. v. Shooster, 860 F.Supp. 826, 828-29 (S.D.Fla.1992) (holding Carmack Amendment preempts state-law claims for fraud or deceptive trade practices, including defendants' counterclaim alleging plaintiff fraudulently induced them to enter into the contract).
Given this wealth of authority, we have no doubt that the Carmack Amendment preempts plaintiffs' suit, which in essence seeks compensation for the damage that defendants caused in transporting plaintiffs' goods interstate. Plaintiffs suffered no other injury and their theories of recovery are merely vehicles to obtain compensation for this damage. Their claim must be adjudicated according to the uniform federal standard of the Carmack Amendment, for that standard provides the exclusive remedy where "the substance of the action is `nothing more than an action for damages against the delivering carrier.'" Intech, Inc. v. Consolidated Freightways, Inc., 836 F.2d 672, 677 (1st Cir.1987); see also Georgia, Florida & Alabama Ry. Co. v. Blish Milling Co., 241 U.S. 190, 197, 36 S.Ct. 541, 544, 60 L.Ed. 948, 952 (1916), quoting Georgia, Florida & Alabama *445 Ry. Co. v. Blish Milling Co., 15 Ga.App. 142, 147, 82 S.E. 784, 787 (1914).
Moreover, plaintiffs' invocation of a federal regulation addressing the precise situation here is additional evidence that Congress intended to supplant varying state remedies with a uniform national standard for cases such as this one.
Because the Carmack Amendment wholly disposes of this case, we need not consider whether section 10b(1) of the Consumer Fraud Act also bars plaintiffs' action.
The judgment of the circuit court of Lake County is affirmed.
Affirmed.
GEIGER, P.J., and DOYLE, J., concur.