KANSAS CITY FIRE & MARINE INSURANCE COMPANY and Circle V. Transportation, Inc., Plaintiffs,

v.

CONSOLIDATED RAIL CORPORATION and Union Pacific Railroad Company, Defendants.

Van Seumeren Holland B.V. and Van Seumeren U.S.A., Inc., Plaintiffs.

v.

Consolidated Rail Corporation and Union Pacific Railroad Company, Defendants.

Nos. CIV.A. 97–8134, CIV.A. 98–2694.

United States District Court, E.D. Pennsylvania.

Feb. 23, 1999.

## MEMORANDUM AND OPINION

ROBERT F. KELLY, District Judge.

Presently before the Court is the motion for summary judgment of Defendants Consolidated Rail Corporation ("Conrail") and Union Pacific Railroad Company (Document No. 13). Plaintiffs Kansas City Fire and Marine Insurance Company and Circle V Transportation, Incorporated ("Circle V") have filed a response to Defendants' motion and a cross-motion for summary judgment (Document No. 16), and Plaintiffs Van Seumeren Holland B.V. and Van Seumeren U.S.A., Incorporated ("Van Seumeren") have done the same (Document No. 20). The Court preliminarily finds the parties have presented their positions adequately and no oral ar-

gument is required, and so Plaintiffs' joint motion for oral argument (Document No. 18) is denied. For the reasons that follow, the Court finds Defendants' liability is limited by the agreement Conrail struck with Circle V, and further finds Defendants' liability to Van Seumeren similarly is limited. The Court therefore will grant Defendants' motion and will deny Plaintiffs' motions.

## I. FACTUAL BACKGROUND

Van Seumeren is the owner of a highly specialized, apparently rare crane that it sought to move from Marcus Hook, Pennsylvania, to Houston, Texas, in November 1995. (Nelson Aff. at 2; Nelson Dep. at 17.) To this end, Van Seumeren enlisted Circle V to arrange for the crane's transportation. (Nelson Dep. at 19.) Circle V disassembled the crane and, because some parts of the crane were too large to move by truck, William Vollmer, the president of Circle V, asked Conrail to provide him with rate and other related information necessary to move those crane pieces to Houston. (Deadwyler Dep. at 11–12.) A Conrail employee, Ms. Emily Deadwyler, faxed Vollmer a clearance file stating the requested information. The clearance file also stated liability terms as follows:

> LOSS & DAMAGE LIABILITY: $50,000
>
> FULL LIABILITY OPTION: THIS OPTION MUST BE SPECIFICALLY REQUESTED AND THE VALUE MUST BE DECLARED ON SHIPPING INSTRUCTIONS, OTHERWISE, $50,000 LIMIT APPLIES. IF CHOSEN, ADD ON TO FREIGHT COSTS ABOVE FOR FULL LIABILITY MAY BE CALCULATED PER INSTRUCTION BELOW:
>
> VALUE OF SHIPMENT MULTIPLIED BY HIGHWAY MILES DIVIDED BY 500,000 (1501 HWY MILES)

(Clearance File at 2.)

Vollmer began supervising the disassembly of the crane in December 1995, and contacted Conrail on January 22, 1996, to notify it that the crane was ready to be transported. (Letter from Vollmer to Hollner of 1/22/96.) Five cars were required to accomplish the move, with the crane superstructure placed on one car. (Corrected Bill of Lading.) Vollmer faxed Conrail a corrected bill of lading the next day, but failed to declare the crane's value on that form. *Id.* Vollmer claims on January 23 he also faxed Conrail a handwritten request to increase the liability limits to $200,000.00, which request Conrail denies having received. Significantly, Van Seumeren did not participate in any of these negotiations, and Vollmer did not disclose Van Seumeren's identity to Defendants at this time. (Nelson Dep. at 19; Vollmer Dep. at 95–96.)

The transport of the crane did not go smoothly. The crane superstructure first was sideswiped by another Conrail train, and later, when on Union Pacific's rails, the train derailed and the crane again was damaged. Circle V's insurer, Kansas City Fire & Marine Insurance, paid Van Seumeren for the physical damage the crane sustained. Van Seumeren claims Defendants are liable to it both for the repair costs not covered by Kansas City and for consequential damages, and has sued under the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 11706 (1994), and common law negligence theories. Kansas City, as Circle V's subrogee, has sued Defendants under the same theories. For the purposes of their motion, Defendants admit they are liable for the damage inflicted on the crane.

While Defendants admit liability, they dispute the amount of damages for which they are liable and the theory under which that liability may be imposed. Accordingly, they have moved for summary judgment against both sets of Plaintiffs. With respect to Circle V, Defendants' argument essentially is that the Carmack Amendment preempts Circle V's common law claims, and that the liability limited provi-

sion in the clearance file is valid under the amendment and limits Defendants' liability to $50,000.00. Circle V attempts to refute Defendants' position by claiming the Carmack Amendment has been overruled by a regulation promulgated by the Interstate Commerce Commission. Circle V builds on this problematic argument by claiming the clearance file is ineffective for a variety of reasons and, alternatively, it is ambiguous if operational. Based upon these arguments, Circle V has filed a cross-motion for summary judgment.

Defendants separately move for summary judgment against Van Seumeren by arguing Van Seumeren's negligence claim is preempted by the Carmack Amendment. Further, Defendants assert that because the Act permits recovery only by those "entitled to recover under the receipt or bill of lading," *id.* § 14706(a), and only Circle V appears on the bill of lading, Van Seumeren lacks standing to recover. Van Seumeren implicitly disagrees with Circle V by acknowledging the Carmack Amendment does apply here, and claims it has standing to sue under the clearance file. Moreover, Van Seumeren believes under the Carmack Amendment it can recover the damages it seeks, and also has filed a cross-motion for summary judgment.

## II. DISCUSSION

A court may grant summary judgment if the pleadings, depositions, and other party admissions demonstrate that there is no genuine issue as to any material fact and the moving party is entitled to summary judgment as a matter of law. Fed. R.Civ.P. 56(c). In contract cases like this one, summary judgment is appropriate when the dispute involves a contract that is unambiguous and therefore resolvable as a matter of law. *Tamarind Resort Assoc. v. Government of the Virgin Islands,* 138 F.3d 107, 110 (3d Cir.1998). Finally, a contract is unambiguous when it is reasonably capable of only one construction. *Id.* at 111. As will be explained below, this contract is an unambiguous one

that presents issues wholly determinable at this stage.

### A. The Carmack Amendment

Defendants claim the Carmack Amendment governs its liability here, and Van Seumeren agrees. Circle V initially claimed a regulation promulgated by the Surface Transportation Board ("STB") somehow "swept away" the Carmack Amendment, (Circle V's Cross–Mot. Summ. J. at 10), but since has reconsidered, (Circle V's Reply Defs.' Resp. at 3). This admission has not dampened Circle V's enthusiasm for that regulation, however; they claim 49 C.F.R. § 1039.11 suspended the application of the tariff the clearance file incorporated, and that this suspension invalidated the liability limiting provision.

■■ The Court agrees with the parties that the Carmack Amendment defines the scope of Defendants' liability. Plaintiffs' claims arise out of the damage Defendants caused the crane, and the Carmack Amendment pertains directly to property damage rail carriers cause. *See id.* That statutory provision plainly is applicable.

### B. The Limitation Of Liability Provision

Also operational here is the provision in the clearance file that limits Defendants' liability. Under the Carmack Amendment, railroads are subject to fairly broad liability for property damage unless they limit their liability in the manner prescribed in § 14706(c), which permits rail carriers to limit their liability in written agreements with the shipper. *Id.* § 14706(c)(3)(A). Defendants have complied with this section. The clearance file and tariff set forth all applicable terms between the rail carrier and the shipper, Circle V, and constitute the written offer Vollmer accepted. Further, as described above, the clearance file plainly states a liability limiting provision, expanded upon in the tariff, that restricts Defendants' liability to $50,000.00. Defendants' liability,

which they admit for the purposes of this motion, accordingly is $50,000.00.

█ Circle V attempts to avoid this liability limitation in a variety of ways, but each ultimately is ineffective. For example, Circle V points to 49 C.F.R. § 1039.11 as suspending the application of all tariffs and, because the clearance file incorporates a tariff, Circle V claims both the clearance file and tariff are nullified. Circle V does recognize, however, that rail carriers may establish documents outlining conditions of their service, but, according to Circle V, these documents must be entitled "circulars" and not the nullified "tariffs." This argument, however, primarily fails because Circle V reads far too much into the regulation. Viewing § 1039.11 as a whole, the STB merely exempted rail carriers from complying with 49 U.S.C. Subtitle IV's requirements concerning certain commodities. *Id.* § 1039.11(a). In so doing, the STB did not issue a regulation that abrogated all documents bearing the title "Tariff,"[1] and the sentence on which Circle V relies, "[a]ll railroad tariffs pertaining to the transportation of these miscellaneous commodities will no longer apply," does not express the STB's desire to invalidate rate and liability schedules rail carriers publish entitled "Tariff." Rather, this regulation extends only to those tariffs on certain commodities Subtitle IV formerly required rail carriers to publish and file with the STB. The tariff incorporated into Defendants' clearance file remains valid.

█ Circle V also claims the tariff is invalid under the framework established in *Carmana Designs v. North American Van Lines,* 943 F.2d 316 (3d Cir.1991). In that case, the Third Circuit found a carrier may limit its liability only when it does the following:

1. Indeed, although in a slightly different context, the STB has restricted the definition of "tariff" only to those documents filed with the STB. *Id.* § 1312.1.

2. Vollmer declared the value of the crane superstructure on neither the bill of lading nor the corrected bill of lading, as the clear-

(1) maintain a tariff within the prescribed guidelines of the Interstate Commerce Commission; (2) obtain the shipper's agreement as to his choice of liability; (3) give the shipper a reasonable opportunity to choose between two or more levels of liability; and (4) issue a receipt or bill of lading prior to moving the shipment.

*Id.* at 319. Circle V argues Defendants could meet the first requirement only by issuing a "circular," cannot meet the second and third requirements because Vollmer had no choice of liability, and have not met the fourth requirement because Defendants adopted the bill of lading Vollmer created, and did not make one on their own. The Court, however, takes a different view. Initially, to the extent the first requirement is not made obsolete by 49 U.S.C. § 11101 and 49 C.F.R. § 1039.11, the Court already has found the tariff was effective. Second, unlike in *Carmana Designs,* where the liability limiting language was obscured, *see Carmana Designs,* 943 F.2d at 320–21, the clearance file prominently stated, in all capital letters, that liability would be limited, and explicitly and simply stated the procedure Circle V should follow to increase the limitation on liability. Vollmer, accordingly, was presented with an opportunity to avoid this limitation but failed to avail himself of it.[2] Finally, Defendants' policy of requiring the shipper to create its own bill of lading, which Defendants then adopt, does not run afoul of the fourth requirement. To the contrary, Defendants' policy protects shippers, who then may ensure the reported values and weights are correct. A shipper like Circle V properly is held to the bill of lading it created. *Cf. American Cyanamid Co. v. New Penn Motor Express, Inc.,* 979 F.2d

ance file required. The letter he faxed to Conrail, therefore, could not satisfy the clearance file's requirements. At best, the Court can construe the letter he faxed to Conrail as meeting the first of the two requirements, a request for a liability limitation increase.

310, 314 (3d Cir.1992). Accordingly, Defendants limited their liability effectively. *Cf. Hollingsworth & Vose Co. v. A–P–A Transp. Corp.*, 158 F.3d 617, 621 (1st Cir. 1998) (holding shipper was bound by a limitation on liability provision where the tariff simply made greater coverage available, the bill of lading gave the shipper the opportunity to elect the greater coverage, and the shipper was a commercial enterprise capable of understanding the agreements it signed).

■ Circle V's remaining arguments are no more availing than the first two. It claims the tariff's restriction on liability to "$50,000 per loaded car" is so ambiguous as to make the limitation inapplicable, but the Court finds there is no ambiguity: the load, in this case the crane, rested on only one car,[3] and only that car was damaged, and so Circle V is entitled to recover only $50,000.00. Circle V also argues both that Vollmer was not a sophisticated shipper and, even if he was, that fact would be irrelevant under *Carmana Designs*. The Court, however, already has found the liability limitation is effective under *Carmana Designs*, and therefore there is no need to resolve these assertions. Finally, Circle V claims this case warrants application of the "material deviation" doctrine, under which courts may overlook limitation of liability provisions when a shipper deviates from a contract so radically that it effectively has changed the contract's terms. *See Praxair Inc. v. Mayflower Transit, Inc.*, 919 F.Supp. 650, 655 (S.D.N.Y.1996). Even if this doctrine, traditionally applied in admiralty cases only, *see id.* at 654, had been extended to rail carriers in this Circuit, which the Court does not believe it has, this case cannot be said to present anything more than simple negligence, not the gross disregard for contractual terms the material deviation doctrine contemplates.

■ Van Seumeren similarly is bound by the provision limiting liability. Van Seumeren admits Conrail first learned of its existence after Vollmer accepted Conrail's offer and after the crane already was involved in the first accident. Van Seumeren, therefore, was not a foreseeable plaintiff to Defendants. There is no remedy for Van Seumeren other than that for which Vollmer negotiated,[4] and, unfortunately for Van Seumeren, the agreement between Conrail and Circle V does not provide for the consequential damages Van Seumeren seeks. Further, with respect to Van Seumeren's claim for actual damages, the limitation of liability provision also applies to Van Seumeren. *Cf. Esprit de Corp v. Victory Express, Inc.*, No. 93–00350, 1999 WL 9939, at *5–*6 (N.D.Cal. Jan.5, 1999) (finding owner of goods was bound to limitation of liability to which the shipper and carrier agreed). Because Van Seumeren is left without any further remedy, it is not necessary for the Court to decide whether an unforeseen owner of property has standing to sue under the Carmack Amendment or whether Van Seumeren's consequential damages claims are preempted by the Carmack Amendment. *Compare* 49 U.S.C. § 11706(a) *and Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 382–83 (5th Cir.1998) *with Gordon v. United Van Lines, Inc.*, 130 F.3d 282, 289 (7th Cir.1997).

---

3. This one car was linked at either end to cars equipped with counter-weights, but the sideswipe involved only the crane, and not any other of Van Seumeren's property.

4. A different result might have occurred had Vollmer accepted Conrail's offer to renegotiate the liability limitation after the first accident, when Vollmer notified Conrail that Van Seumeren owned the crane. Vollmer, however, declined to renegotiate the provision, and as a result both Circle V and Van Seumeren were bound by the original limitation of liability provision.