Gershengorn, J.
Plaintiff, Jane A. Alessandra (“Al-essandra”), brings this action seeking damages allegedly resulting from the application of pesticides by defendant, The Terminix International Company, L.P. ("Terminix”), to plaintiffs belongings while they were stored at a warehouse owned by defendant, Mullen Brothers, Inc. of North Adams (“Mullen”), a moving and storage company. Mullen now moves to dismiss Alessandra’s claims against it on the ground that her causes of action are preempted by the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. §14706 (“Carmack Amendment”). Alessandra responds that the Carmack Amendment does not preempt her claims against Mullen because the application of pesticides occurred while her items were stored by Mullen and not during interstate transportation and because her injuries were separate and independent from, and, at the most, incidentally related to, the damage to her goods. For the reasons set forth below, Mullen’s motion to dismiss is allowed.
BACKGROUND
On December 12, 1995, Mullen agreed to pack Alessandra’s personal belongings located in her residence in Troy, New York, move them to Mullen’s storage warehouse in Schenectady, New York, store them at that facility for a period of time, and then move them to Alessandra’s new residence in Belmont, Massachusetts. On December 13, 1995, Mullen packed Alessandra’s belongings and moved them to its warehouse in Schenectady. Thereafter, on December 28, 1995, Terminix employees applied pesticides in Mullen’s warehouse and caused the pesticides to come into contact with Alessandra’s belongings. On January 18, 1996, Mullen transported Alessandra’s belongings to her apartment in Belmont. While unpacking her belongings, Alessandra alleges that she experienced an immediate, severe physical reaction, which required medical attention and forced her to move out of her Belmont apartment. Alessandra claims that the pesticide exposure caused her to develop Multiple Chemical Sensitivity, which completely disabled her.
On December 8, 1998, Alessandra commenced the instant action by filing a complaint. After amending that complaint on March 19, 1999, she submitted a second amended complaint on May 10, 1999, alleging the following causes of action against Mullen: negligence (Count I), breach of contract (Count II), violations of G.L.c. 93A (Count III), breach of bailment contract (Count IV), violations of 49 U.S.C. §14706 (Count VI), and strict liability (Count IX).
DISCUSSION
When evaluating the sufficiency of a complaint pursuant to Mass.R.Civ.P. 12(b)(6), the court must accept as true the well-pleaded factual allegations of the complaint, as well as any reasonable inferences which can be drawn therefrom in the plaintiff s favor. Eyal v. Helen Broadcasting Corp., 411 Mass. 426, 429 (1991). The “complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.” Nader v, Citron, 372 Mass. 96, 98 (1977), quoting Conley v. *547 Gibson, 355 U.S, 41, 45-6 (1957). All inferences should be drawn in the plaintiffs favor, and the complaint “is to be construed so as to do substantial justice ...” Ourfalian v. Aro Mfg. Co., 31 Mass.App.Ct. 294, 296 (1991).
The Carmack Amendment provides, in relevant part:
A carrier providing transportation or service . . . shall issue a receipt or bill of lading for property it receives for transportation under this part. That carrier ... [is] liable to the person entitled to recover under the receipt or bill of lading. The liability imposed under this paragraph is for the actual loss or injury to the property ... 49 U.S.C. § 14706(a)(1).[2]
Congress enacted the Carmack Amendment in order to provide “national uniformity in the liability assigned to carriers ... ‘to relieve such contracts from the diverse regulation to which they had been theretofore subject.’ ” Rini v. United Van Lines, Inc., 104 F.3d 502, 504 (1st Cir. 1997), quoting Adams Express Co. v. Croninger, 226 U.S. 491, 506 (1913). The Carmack Amendment covers every detail of the subject of a carrier’s liability under a bill of lading such “that there can be no rational doubt but that Congress intended to take possession of the subject and supersede all state regulation with reference to it.” Adams Express Co., 226 U.S. at 505-06. Therefore, state law claims which are “based on the loss or damage of shipped goods are preempted,” including “all liability stemming from damage or loss of goods, liability stemming from the claims process, and liability related to the payment of claims.” Rini, 104 F.3d at 506 (emphasis in original). “On the other hand, liability arising from separate harms — apart from the loss or damage of goods — is not preempted.” Id. (providing examples of separate harms, such as injuries from an assault on a shipper by a carrier’s employee or from the intentional infliction of emotional distress).
Alessandra claims that the Carmack Amendment is inapplicable to the case at bar because the pesticides were applied to her belongings while they were being stored and not while they were being transported. However, Congress has defined “transportation” more broadly than Alessandra’s narrow interpretation. “The term ‘transportation’ includes— (A) a motor vehicle, vehicle, warehouse, wharf, pier, dock, yard, property, facility, instrumentality, or equipment of kind related to the movement of . . . property, . . . regardless of ownership or an agreement concerning use; and (B) services related to that movement, including arranging for, receipt, delivery, elevation, transfer in transit, . . . storage, handling, packing, unpacking, and interchange of. . . property.” 49 U.S.C. §13102(19). Since the storage of Alessandra’s belongings was a service related to the movement of her property, it falls within Congress’ definition of transportation. See Margetson v. United Van Lines, Inc., 785 F.Sup. 917, 919 (D.N.M. 1991) (holding that the “preemptive effect [of the Carmack Amendment] extends to damages allegedly occurring as a result of improper storage methods”).
Alessandra further contends that she had three separate contracts with Mullen, one for the intrastate transportation of her belongings from Troy, New York to Mullen’s facility in Schenectady, New York, one for the storage of her items in Mullen’s warehouse, and one for the interstate transportation of her belongings from Schenectady to Belmont, Massachusetts. Alessandra argues that the Carmack Amendment is inapplicable to the first two contracts, the condition of which covers the time when Terminix applied the pesticides to her property. However, although there are three separate documents, they all involve the same transaction, that is, transporting her belongings from Troy, New York to Belmont, Massachusetts. The storage in Schenectady was incidental to the main purpose of the agreement between her and Mullen, which was to transport her property from New York to Massachusetts, an interstate shipment. See Schultz v. Auld, 848 F.Sup. 1497, 1504 (D. Idaho 1993) (the goods transported from California to Idaho were the same goods transported from plaintiffs apartment in Idaho to her storage unit in Idaho; and, thus, the “[d]elivery of those same goods to the storage unit was within the ambit of the interstate move and an extension of the reasonable intent of the parties to transport the goods from California to Idaho”). Cf. Baltimore & Ohio Southwestern R.R. Co. v. Settle, 260 U.S. 166, 169-71 (1922) (where defendant shipped lumber interstate via plaintiffs railroad and then, without unloading the lumber, shipped it intrastate via plaintiffs railroad, but under a local bill of lading, plaintiff was entitled to recover the difference between what it was paid and what it would have been paid had defendant shipped the lumber under “through billing,” since, although there were two stages involved in the movement of the lumber, the essential character of the shipment was to transport the lumber from one state to another).
Alessandra admits, in her second amended complaint, that the shipment of her belongings from New York to Massachusetts was the intent of the parties. Specifically, she states that “[o]n or about December 12, 1995, Mullen agreed to pack [her] personal belongings which then were located in [her] residence in Troy, New York, move them to Mullen’s warehouse, store them there for a period of time and then move them to Massachusetts where [she] would be residing.” Second Amended Complaint and Jury Demand, at p. 2, para. 4. That admission determines the essential character of the shipment. Baltimore & Ohio Southwestern R.R. Co., 260 U.S. at 171 (an admission that, at all times, the goods were intended to be shipped from one state to another, regardless that there was a midway stop, determines the essential nature of the shipment). *548 Therefore, the movement of Alessandra’s household belongings from her home in New York to Mullen’s storage facility in New York and then to her new residence in Massachusetts constitutes continuous interstate shipment of her property from New York to Massachusetts.
In addition, Alessandra’s argument that her claims are not preempted by the Carmack Amendment because of provisions contained in the three relevant documents that demonstrate Mullen’s intention to be subject to state law and liability for negligence, is meritless. A party cannot waive the applicability of the Carmack Amendment and agree to be subject to state law. Joseph Land & Co., Inc. v. Christopher Edwards Companies, 440 S.E.2d 234, 235 (Ga.App. 1993), citing Hughes v. United Van Lines, Inc., 829 F.2d 1407, 1415 (7th Cir. 1987), cert. denied 485 U.S. 913 (1988).
Alessandra also claims that Mullen has denied its carrier status in the storage contract and essentially waived its limited liability under the Carmack Amendment. Alessandra directs the court’s attention to the back side of the storage contract, which states that Mullen “is in no event common carrier.” Storage Contract, dated December 12, 1995, Terms and Conditions, para. 3(a). However, paragraph 3(a), in its entirety, states that “[Mullen] when transporting to or from the warehouse for permanent storage acts as a private carrier only, reserving the right to refuse any order for transporting and in no event is a common carrier.” (Emphasis added). Therefore, Mullen’s denial of carrier status in paragraph 3(a) was only in relation to permanent storage and, thus, is inapplicable to the instant case which involves a contract for temporary storage.
Alessandra further argues that her injuries were separate and apart from the damage to her property. However, according to her complaint, the pesticide applied to her property was a direct causal factor of her Multiple Chemical Sensitivity disease as well as the other injuries from which she suffered. All of Alessandra’s claims against Mullen are based on her allegations that Mullen improperly stored her belongings, faded to protect her property from the application of pesticides, and failed to notify her of the pesticide application. “The cases make it clear that when damages are sought against a common carrier for failure to properly perform, or for negligent performance of an interstate contract of carriage, the Carmack Amendment governs.” R.H. Fulton v. Chicago Rock Island Pac. R.R. Co., 481 F.2d 326 (8th Cir. 1973), quoting Am. Synthetic Rubber Corp. v. Louisville & Nashville R.R. Co., 422 F.2d 462, 468 (6th Cir. 1970). See Hughes, 829 F.2d at 144. See also New York, Philadelphia & Norfolk R.R. Co. v. Peninsula Produce Exch. of Maryland, 240 U.S. 34, 38 (1916) (the Carmack Amendment “embracéis] all damages resulting from any failure to discharge a carrier’s duty with respect to any part of the transportation . . .”). Since Alessandra claims that Mullen failed to properly pack, store, or move her property, and that such failure allowed pesticides to be applied to her property, the Carmack Amendment governs.
In her negligence claim (Count I), Alessandra alleges that Mullen breached its duty to pack, store, and, move her belongings with reasonable care, to not allow pesticides to contact her belongings, and to notify her of the application of pesticides to her property. Her breach of contract claims (Counts II and IV) allege that Mullen breached its contract to pack, store and move her belongings in a safe and workmanlike manner, to prevent any loss or destruction to her property, and to deliver her belongings in the same condition as they were in when she first delivered them to Mullen. In her claim for violations of G.L.c. 93A (Count III), Al-essandra alleges that Mullen committed unfair and deceptive acts or practices by failing to disclose that it had a practice of applying pesticides in its warehouse, allowing the pesticide application, failing to notify her of that application, failing to respond to her demand letter and make a reasonable settlement offer, and requiring her to sign a storage contract which stated that her rights were governed by common law and that Mullen would be liable for negligence and then claiming that her causes of action were preempted by federal law. Further, in her strict liability claim (Count IX), Alessandra alleges that Mullen is strictly liable for the damage caused to her property by the application of pesticides, an ultra-hazardous activity. It is clear from the above recitation of Alessandra’s causes of action that each and every one stems from the transportation of her property and the services related thereto.
In Tayloe v. Kachina Moving & Storage, Inc., 16 F.Sup.2d 1123 (D.Ariz. 1998), the plaintiff alleges that, during defendant’s movement and storage of her household belongings, some of her property was lost and damaged and that the mold damage to some of her property caused her to have a severe allergic reaction, requiring two hospitalizations. Tayloe, 16 F.Sup.2d at 1126. She brought four claims against defendant, namely, a Carmack Amendment claim, a breach of contract claim, a breach of an implied duty to perform work in a skillful and workmanlike manner claim, and a negligence claim. The District Court held that since these “claims arise out the interstate transportation of [her] household goods . . . , [her] state law claims are preempted . . . under the Carmack Amendment.” Id. at 1128. However, the Court noted that plaintiff maybe able to recover special damages under her Carmack Amendment claim because of her allegation that she informed defendant of her allergies and requested that defendant store her goods in a dry atmosphere. Id. at 1129.
Here, as in Tayloe, Alessandra’s claims arise directly out of the interstate transportation of her belongings because her injuries allegedly were caused by Mullen’s misconduct with regard to the storage of her *549 property and the manner in which Mullen handled Alessandra’s claim under 93A. See, e.g., Tayloe, 16 F.Supp.2d at 1128-29. See also Gordon v. United States Van Lines, Inc., 130 F.3d 282, 284 (7th Cir. 1997) (holding that “the Carmack Amendment preempts all state law claims based upon the contract of carriage, in which the harm arises out of the loss of or damage to goods”). Stated another way, all of the harms of which Alessandra complains arise out of the pesticide damage to her belongings. Gordon, 130 F.3d 282. See also Mesta v. Allied Van Lines Int Inc., 695 F.Sup. 63, 65 (D. Mass. 1988) (Carmack Amendment preempts state claims for “direct or consequential injuries arising from the loss of, or damage to, property carried under a bill of lading”) (emphasis added). Even Alessandra’s claim that Mullen violated c. 93A by requiring her to sign a storage contract which stated that Mullen would be liable for negligence and that Alessandra’s rights were governed by common law and then claiming that her causes of action were preempted by federal law “are so closely related to the performance of the contract” that it is preempted by the Carmack Amendment. Gordon, 130 F.3d at 289 (the Carmack Amendment preempts plaintiffs claim for violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, which alleges fraudulent inducement to contract). None of Alessandra’s injuries were independent from the damage caused to her property, unlike the Rini example of injuries resulting from an assault and battery committed by a carrier’s employee upon a shipper. See Rini, 104 F.3d at 506. Therefore, the Carmack Amendment preempts all of Alessandra’s state law causes of action against Mullen.[3]
ORDER
It is hereby ORDERED that Mullen’s Motion to Dismiss is ALLOWED as to Counts I, II, HI, IV, and IX, and DENIED as to Count VI.

 The Carmack Amendment, prior to January 1, 1996, was codified at 49 U.S.C. §11707. Alessandra brought her Car-mack Amendment claim under the new codification, 49 U.S.C. §14706, which became effective as of January 1, 1996, and both parties cited to that section in their memorandums of law. Since both the pre-January 1, 1996 and post-Januaiy 1, 1996, versions of the Carmack Amendment are substantially the same and the parties do not dispute which version is applicable to the instant case, the Court will utilize the language of 49 U.S.C. §14706 in its determination ofMullen’s motion to dismiss.

 The Court notes that Alessandra’s Carmack Amendment claim against Mullen is still viable at this stage in the proceedings.