In the

# United States Court of Appeals

## For the Seventh Circuit

No. 07-2710

REI TRANSPORT, INC.,

*Plaintiff-Appellant,*

*v.*

C.H. ROBINSON WORLDWIDE, INC.,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Southern District of Illinois.
No. 05-00057—**G. Patrick Murphy**, *Judge.*

ARGUED JANUARY 15, 2008—DECIDED MARCH 20, 2008

Before EASTERBROOK, *Chief Judge*, and FLAUM and EVANS,
*Circuit Judges.*

FLAUM, *Circuit Judge.* C.H. Robinson Worldwide, Inc.
is a freight broker (or, in its estimation, a "travel agent
for freight"). REI Transport, Inc., is an Illinois trucking
company that provides drayage services—in this case,
the local delivery of cargo from a railroad terminal to the
cargo's final destination. The retail electronics company
Circuit City hired C.H. Robinson to coordinate the ship-
ment of several hundred DVD players from a Circuit
City warehouse in California to another warehouse in
southern Illinois. In so doing, C.H. Robinson contracted
with REI Transport to carry the DVD players the final leg

of the trip—from a train depot near St. Louis to Marion, Illinois. As it turned out, through no fault of REI Transport's, the shipment arrived short approximately $85,000 worth of DVD players. C.H. Robinson indemnified Circuit City for the lost DVD players, and Circuit City assigned any right to recover to C.H. Robinson. Surmising that REI Transport was responsible for the loss and pursuant to its contract with REI Transport, C.H. Robinson withheld amounts from what it owed REI Transport.

REI Transport then filed this suit in the Southern District of Illinois, alleging conversion, unjust enrichment, and that C.H. Robinson breached the parties' contract by withholding payment. In its defense, C.H. Robinson counterclaimed that, under the Carmack Amendment, REI Transport owed more money for the damaged cargo. The district court agreed with C.H. Robinson and dismissed REI Transport's claims. This appeal followed and, for the reasons set out below, we affirm.

## I. Background

The interstate shipment of goods is a complicated business. Moving a given quantity of goods from one part of the country to another frequently involves several unrelated carriers using different modes of transportation, ranging from trucks, railroads, and freighters to the occasional plane. Locating and contracting with multiple carriers for a multistate shipment may be prohibitively expensive for the average shipper. So third parties fill the gap by negotiating lower rates with a number of carriers around the country and selling their logistical services to would-be shippers.

C.H. Robinson is one such company. In October 2003, Circuit City hired C.H. Robinson to move several hun-

dred portable DVD players from its facility in Walnut, California to another facility in Marion, Illinois. Three different carriers would ultimately move the shipment from Walnut to Marion. Patriot Logistics, Inc. first trucked the cargo from Circuit City's facilities in Walnut to a railroad depot in Los Angeles. Union Pacific Railroad then moved the cargo by train from Los Angeles to Dupo, Illinois. And REI Transport completed the shipment by trucking the cargo to Circuit City's facilities in Marion. REI Transport had contracted with C.H. Robinson in May 2002 to make at least three shipments for C.H. Robinson as the need arose. This would be one of those shipments, governed by the terms of their 2002 contract.

Things began innocently enough. Prior to sending the cargo out from the Walnut facility, a Circuit City employee, John Abarca, verified the contents of the shipment, which consisted of 4633 pieces of electronics, including over 1100 DVD players. Abarca then locked the container with a numbered, steel-cable security seal and recorded the seal number on the bill of lading, which consigned the goods to Circuit City's warehouse in Marion. Patriot picked up the shipment, signed the bill of lading, and delivered the cargo to Union Pacific in Los Angeles. When the train began to chug eastward, the steel security seal was still intact, along with all of the original cargo.

But problems soon arose. En route, a Union Pacific employee noticed that the container's seal was missing (along with the seals for several other containers on the train). A security guard for Union Pacific, Lucas Melendez, filled out an inspection report for Circuit City's container in which he indicated both that the original seal was gone and that there was an "unknown loss" of DVD players. Melendez then resealed the container with a

numbered Union Pacific seal, and the train moved along to Dupo, Illinois, where REI Transport picked it up. The receipt obtained by REI Transport's driver from Union Pacific erroneously indicated that the container had Circuit City's original seal. But, after delivery in Marion, Circuit City's receipt from REI Transport had the Union Pacific seal number instead—making it appear, on paper at least, that the seal had changed while the container was in REI Transport's custody.

On November 1, 2003, Circuit City broke the Union Pacific seal on the container and determined that 295 portable DVD players were missing from the shipment, a value of $85,429.98. In January 2004, it sent a claim to C.H. Robinson for the full amount of its loss. C.H. Robinson initially forwarded the claim on to REI Transport, which denied that it was responsible for the loss and refused to pay. C.H. Robinson eventually paid Circuit City the full amount claimed, and in return Circuit City assigned C.H. Robinson "all rights, title and interest in and claim to any payment from any and all carriers involved in the shipment of" the lost DVD players. The May 2002 carrier agreement with REI Transport provided that "[c]ompensation paid to [REI Transport] under this Contract may be withheld in whole or in part by Robinson . . . to satisfy claims or shortages arising out of this or other Contracts." Pursuant to Circuit City's assignment and this provision of the carrier agreement, C.H. Robinson withheld $81,232.64 from amounts it owed to REI Transport to cover the claim.[1]

---

[1] The difference between the amount C.H. Robinson paid to Circuit City—$85,429.98—and the amount C.H. Robinson withheld—$81,232.64—stems from a police investigation that
(continued...)

REI Transport filed this suit in the Southern District of Illinois alleging breach of contract, conversion, and unjust enrichment. The crux of REI Transport's claims was a provision of the May 2002 carrier agreement with C.H. Robinson that provided REI Transport "hereby assumes all liability for cargo loss and damage while such commodities are in [its] custody or control." Because the damage had not occurred when the container was in REI Transport's "custody or control," REI Transport claimed that it was entitled to full payment. C.H. Robinson counterclaimed under the Carmack Amendment, 49 U.S.C. § 14706, arguing that REI Transport was required to pay for the lost DVD players even if it was not ultimately responsible. After discovery, the district court denied REI Transport's motions for summary judgment. The court reasoned that REI Transport's claims for conversion and unjust enrichment both failed under Illinois law. The court also denied REI Transport's breach of contract claim, reasoning that it was preempted by the Carmack Amendment. Finally, the court granted C.H. Robinson's motions for summary judgment and judgment on the pleadings, and ordered REI Transport to pay over $4197.34 to C.H. Robinson. This appeal followed.

---

[1] (...continued)
recovered a number of DVD players soon after the robbery. Circuit City initially thought these recovered DVD players were from its shipment and gave C.H. Robinson a credit (which was accordingly credited to REI Transport through a lower withheld amount). But electronics thievery is apparently rampant; these DVD players were from another shipment. Accordingly, C.H. Robinson is seeking the full amount that it initially paid to Circuit City offset by any amounts withheld from REI Transport.

## II. Discussion

REI Transport raises two issues on appeal. First, it submits that the district court erred in holding that the Carmack Amendment preempted its breach-of-contract claim against C.H. Robinson. Second, REI Transport argues that C.H. Robinson has not made out its prima facie case. The following sections discuss each argument in turn.

### A.    Effect of the Carmack Amendment on REI Transport's Claim

REI Transport challenges the district court's conclusion on summary judgment that the Carmack Amendment preempts its breach-of-contract claim, a decision we review de novo.[2] The Carmack Amendment generally preempts separate state-law causes of action that a shipper might pursue against a carrier for lost or damaged goods. *Adams Express Co.*, 226 U.S. at 505; *Hughes v. United Van Lines, Inc.*, 829 F.2d 1407, 1414 (7th Cir. 1987). The issue in this case is whether breach-of-contract claims by a carrier against a "person entitled to recover" under the Carmack Amendment fall within this preemptive sweep. We hold that the Carmack Amendment does not

---

[2] In its brief, REI Transport also argues that C.H. Robinson made three separate shipment contracts with three separate carriers and thus, in light of the Supreme Court's decision in *Reider v. Thompson*, 339 U.S. 113 (1950), the Carmack Amendment does not apply. But REI Transport never pursued this tack before the district court, a prerequisite if this Court is to hear it, and this claim is therefore forfeited. *El-Khader v. Monica*, 366 F.3d 562, 567 (7th Cir. 2004).

preempt all claims by a carrier against a shipper or other "person entitled to recover" for non-payment. Nonetheless, REI Transport's claim still fails because C.H. Robinson was justified in withholding payment.

The Carmack Amendment cured a number of maladies that had afflicted the market for the interstate shipment of goods. Foremost among these problems were the disparate schemes of carrier liability that existed among the states, some of which allowed carriers to limit or disclaim liability, others that permitted full recovery. *Adams Express Co. v. Croninger*, 226 U.S. 491, 505 (1913). Under this patchwork of regulation, a carrier could be "held liable in one court when under the same state of facts he would be exempt from liability in another" making it "practically impossible for a shipper engaged in a business that extended beyond the confines of his own State . . . to know . . . what would be the carrier's actual responsibility as to goods delivered to it." *Id.*

To solve this problem, the Carmack Amendment "created a nationally uniform rule of carrier liability concerning interstate shipments." *North Am. Van Lines v. Pinkerton Sec. Sys.*, 89 F.3d 452, 454 (7th Cir. 1996). Since its enactment, a carrier of an interstate shipment is "liable to the person entitled to recover under the receipt or bill of lading," plain and simple. 49 U.S.C. § 14706(a)(1). The "person entitled to recover" can bring suit against either the delivering carrier or the originating carrier for the "actual loss or injury to the property caused" by any carrier in the course of the interstate shipment. 49 U.S.C. § 14706(a)(1); *see also Tempel Steel Corp. v. Landstar Inway, Corp., Inc.*, 211 F.3d 1029, 1030 (7th Cir. 2000) ("A shipper may look to its chosen carrier, which then bears the responsibility for seeking compensation from another

carrier actually responsible for the loss."). A shipper can thus be confident that the carrier will be liable for any damage that occurs to its shipment. And a carrier can accurately gauge, and thus insure against, any liability it may face when it agrees to carry something.

Congress ensured the national uniformity of this scheme of liability in two ways: by preempting state causes of action against carriers for damaged or lost goods; and by placing substantive limits on the rights of carriers to contract away liability. *Adams Express Co.*, 226 U.S. at 505. The preemptive sweep of the Carmack Amendment extends to state causes of action against carriers "where goods are damaged or lost in interstate commerce." *Hughes v. United Van Lines, Inc.*, 829 F.2d 1407, 1414 (7th Cir. 1987); *see also Gordon v. United Van Lines, Inc.*, 130 F.3d 282, 287 (7th Cir. 1997). The statute limits the carrier's liability to the "actual loss or injury to the property" damaged en route, 49 U.S.C. § 14706(a)(1), and a shipper cannot bypass these limits by filing a state suit for the damaged goods unless the claim seeks to remedy a "separate and independently actionable harm." *North American Van Lines, Inc. v. Pinkerton Sec. Sys., Inc.*, 89 F.3d 452, 458 (7th Cir. 1996); *Gordon*, 130 F.3d at 287. Nor can states enact laws that would give carriers a break by limiting their liability below what the Carmack Amendment imposes.

The Carmack Amendment also affects the substance of contracts covering interstate shipments. Carriers cannot contract away liability for damaged shipments in their carrier agreements as they could before the Carmack Amendment came into effect. Aside from one narrow exception not at issue here, *see* 49 U.S.C. § 14706(C)(1)(A), contractual terms purporting to limit a carrier's liability

below the "actual loss or injury to the property" are dead letters. *See Adams Express Co. v. Croninger*, 226 U.S. 491, 505 (1913) (stating that Carmack Amendment "embraces the subject of the liability of the carrier under a bill of lading which he must issue and limits his power to exempt himself by rule, regulation or contract"); *see also Tempel Steel Corp.*, 211 F.3d at 1031.

The district court held that the Carmack Amendment preempts REI Transport's breach-of-contract claim against C.H. Robinson. On appeal, REI Transport submits that this holding is much too broad; preemption in this case would bar a jilted carrier from pursuing any claim against a shipper if the case involved damaged goods. We agree. The Carmack Amendment only preempts "state and common law remedies inconsistent with the federal Act." *Hughes*, 829 F.2d at 1414. These inconsistent remedies consist of "state statutory or common law [claims] against a carrier for damages to the shipper's goods that have been transferred in interstate commerce." *Gordon*, 130 F.3d at 289. Congress regulated the field of interstate carrier liability to provide a uniform cause of action against carriers. But it did not preempt every claim related to damaged or lost goods. For example, if a shipper with-holds a greater amount than what it was owed for dam-aged goods, a carrier could seek legal recourse for the difference or, as with carrier liability, the shipper may be liable for other "independently actionable harms that are distinct from the loss of, or the damage to, the goods." *Gordon*, 130 F.3d at 289. Accordingly, claims that do not affect a carrier's liability for lost or damaged goods—such as a suit by a carrier against a "person entitled to recover" for non-payment—do not upend the uniformity effected by the Carmack Amendment and are therefore not preempted.

But that doesn't mean that REI Transport has a valid breach-of-contract claim. Even though the Carmack Amendment doesn't prohibit the current lawsuit out-right, the Act may still doom the carrier's claim that the shipper breached the contract. REI Transport's basic argument is that C.H. Robinson unjustifiably refused to pay amounts owed. Non-payment is a material breach of a contract unless the withholding party has a "valid excuse." *Peet v. City of East Grand Forks,* 101 Minn. 518, 521 (1907). The issue here is whether C.H. Robinson's exercise of self-help was justified based on its right under the contract to withhold payment "to satisfy claims or shortages arising out of this or other Contracts," which would include claims arising under the Carmack Amendment. If C.H. Robinson was justified, then REI Transport's claim must fail because, by legitimately withholding payment, C.H. Robinson did not breach the carrier agreement. *See, e.g.*, RESTATEMENT (SECOND) OF CONTRACTS § 235, cmt. b (1981) ("Non-performance is not a breach unless perfor-mance is due."); *see generally* Celia R. Taylor, *Self-Help in Contract Law: An Exploration and Proposal*, 33 WAKE FOREST L. REV. 839, 879 (1998).

In addition, REI Transport cannot claim any rights under the provision in the carrier agreement purporting to limit its liability to damage occurring while cargo was in its "custody or control." If a provision of a contract violates a statute—and in this case the limitation of liability provision cannot be squared with the Carmack Amendment—that provision is void. *See Roering v. Grinnell Mut. Reinsurance Co.*, 444 N.W.2d 829, 833 (Minn. 1989). Thus, to resolve whether REI Transport has a valid claim, it's necessary to examine whether C.H. Robinson made out its prima facie case under the Carmack Amendment so as to justify withholding payment.

### B. C.H. Robinson's Prima Facie Case Under the Carmack Amendment

If C.H. Robinson makes out its prima facie case, it both defeats REI Transport's breach-of-contract claim and entitles it to recover the additional $4197.34 it is owed for what it paid Circuit City. The prima facie case under the Carmack Amendment is straightforward: a plaintiff must show "(1) delivery in good condition; (2) arrival in damaged condition; and (3) the amount of damages." *Am. Nat'l Fire Ins. Co. v. Yellow Freight Sys.*, 325 F.3d 924, 929 (7th Cir. 2003). If the plaintiff establishes the prima facie case, the burden shifts to the defendant "to show both that it was free from negligence and that the damage to the cargo was due to one of the excepted causes relieving the carrier of liability," a showing REI Transport does not attempt to make. *Id.* The district court held that C.H. Robinson had made its case and granted its motion for summary judgment. We review this decision de novo and, for the following reasons, we affirm.

REI Transport doesn't dispute that the goods arrived in a compromised condition, conceding the second and third element of C.H. Robinson's prima facie case. But it does dispute that C.H. Robinson proved that the shipment was delivered to Patriot in good condition. This argument is in considerable tension with REI Transport's concession that Union Pacific was in possession of the cargo when the loss occurred. Regardless, C.H. Robinson clearly established that the cargo was in good condition when Circuit City loaded it in Walnut, California. In the first place, the bill of lading for the entire shipment of 4633 items issued by Patriot to Circuit City did not contain any exceptions. This provides "some evidence that the shipment was received in good condition." *Am. Nat'l Fire Ins. Co.*, 325 F.3d at 929. In addition, the "pick sheet"

itemizing the contents of the shipment clearly showed the Stock Keeping Unit ("SKU") numbers for the two kinds of DVD players that were ultimately stolen and listed their quantity as 428 cartons with 858 units of one and 54 cartons with 270 units of the other kind of DVD player. And the affidavits of two Circuit City employees established the general procedures for loading and unloading shipments at Circuit City facilities. Circuit City employee John Abarca stated in his (unrebutted) deposition and affidavit that these procedures were followed when loading the shipment in Walnut, California. This testimony established that Patriot would have loaded all of Circuit City's cargo identified in the pick sheet and listed in the bill of lading. Such circumstantial evidence is sufficient for C.H. Robinson to establish its prima facie case. *See Pharma Bio, Inc. v. TNT Holland Motor Exp., Inc.*, 102 F.3d 914, 917 (7th Cir. 1996) (crediting affidavit stating that company "followed certain procedures for hundreds of shipments . . ., including the shipment in question").

Thus, the district court did not err in finding that C.H. Robinson had made out its prima facie case under the Carmack Amendment. As a result, C.H. Robinson had a "valid excuse" for withholding payment to REI Transport for the lost DVD players. As a "person entitled to recover" under the Carmack Amendment, it was similarly entitled to withhold payment from REI Transport to cover the "actual loss or injury to the property." This result obtains notwithstanding the provision in the carrier agreement purporting to limit REI Transport's liability, a provision invalidated by the Carmack Amendment. Accordingly, C.H. Robinson did not breach its contract with REI Transport when it refused to pay all that it owed. In addition, because the amount that it withheld was less than the

"actual loss or injury to the property," C.H. Robinson is entitled to recover an additional $4197.34 for its successful Carmack Amendment claim.

### III. Conclusion

For the foregoing reasons, we AFFIRM the district court on all counts.