**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-4515
_____

CERTAIN UNDERWRITERS AT INTEREST AT LLOYDS
OF LONDON JOINTLY AND SEVERALLY
SUBSCRIBING TO INSURANCE POLICY
S110020 AS SUBROGEES OF FIRST STATE
DEPOSITORY, LLC.,

Appellants

v.

UNITED PARCEL SERVICE OF AMERICA, INC.

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(No. 2-13-cv-01087)
District Judge:  Hon. Michael M. Baylson
_____

Argued:  July 8, 2014

Before:  RENDELL, CHAGARES, and JORDAN, <u>Circuit
Judges</u>.

(Filed: August 12, 2014 )

Robert J. Cosgrove, Esq. (ARGUED)
Wade, Clark & Mulcahy
1515 Market Street
Suite 2050
Philadelphia, PA 19102

Clayton H. Thomas, Jr., Esq.
Clayton H. Thomas & Associates
1515 John F. Kennedy Boulevard
Suite 1100

Philadelphia, PA 19102
    Counsel for Appellants

Jerry R. DeSiderato, Esq. (ARGUED)
Dilworth Paxson
457 Haddonfield Road
Suite 700
Cherry Hill, NJ 08002
    Counsel for Appellee

_____

OPINION
_____

CHAGARES, Circuit Judge.

This case calls upon us to construe the preemptive scope of the Carmack Amendment, 49 U.S.C. § 14706, and to clarify the judicially-created "true conversion" exception. We hold that the Carmack Amendment preempts all state law claims for compensation for the loss of or damage to goods shipped by a ground carrier in interstate commerce. We also conclude that the "true conversion" exception is an exception to the liability limiting features of the Carmack Amendment, not an exception to its preemptive scope. We will therefore affirm the order of the District Court.

I.

This case is about missing packages. First State Depository, LLC ("First State") provides custody, shipping, and accounting services for coins and special metals. When it ships coins or special metals, it often does so via a ground carrier such as the United Parcel Service of America, Inc. ("UPS"), as it did here. The plaintiffs, First State's third-party insurers (the "Underwriters") invoke their subrogation rights and allege that twenty-seven of First State's shipments were lost or stolen by UPS or its employees during an eight-week period in early 2012. UPS never located any of the missing packages, which were allegedly worth a total of $150,000.00.

2

The Underwriters brought state law claims against UPS in the United States District Court for the Eastern District of Pennsylvania for breach of contract, negligence, negligent supervision of employees, and "true [and] fraudulent conversion." Appendix ("App.") 307-404. In their conversion claim, they alleged that "UPS or its employees, agents, technicians, vendors, subcontractors, drivers and/or servants" deprived First State of its property and "[u]nlawfully took, carried away, concealed, stole or obtained [the shipments] by fraud or deception." App. 308. The Underwriters premised subject matter jurisdiction solely on the complete diversity of the parties; they did not bring any claims based upon federal law.

The District Court dismissed the Underwriters' amended complaint for failure to state a claim upon which relief could be granted. It held that the Carmack Amendment preempted all of the Underwriters' state law claims. App. 11. It recognized that some courts have found "that the Carmack Amendment's liability limitations do not apply when the common carrier has committed a true conversion of goods," but held that this exception did not permit an action based on state law, but rather abrogated the limitation of liability for causes of action brought under the Carmack Amendment itself. App. 11-12. Because the Underwriters only brought state law claims, the District Court held that the exception did not save their complaint. Finally, the District Court noted that the Underwriters failed to plead their true and fraudulent conversion claim with the particularity demanded by Federal Rule of Civil Procedure 9(b). App. 14-15. The Underwriters timely appealed.

## II.

The District Court exercised diversity jurisdiction pursuant to 28 U.S.C. § 1332. We have jurisdiction pursuant to 28 U.S.C. § 1291.

Our review of the District Court's grant of a motion to dismiss is plenary. Fowler v. UPMC Shadyside, 578 F.3d 203, 206 (3d Cir. 2009). To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

3

A complaint has facial plausibility when there is enough factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). We disregard legal conclusions and recitals of the elements of a cause of action that are supported only by mere conclusory statements. Santiago v. Warminster Twp., 629 F.3d 121, 128 (3d Cir. 2010).

III.

We address two issues in resolving this appeal: first, whether the Carmack Amendment preempts the Underwriters' state law claims; and second, whether the "true conversion" exception is an exception to the Carmack Amendment's preemptive scope, or to the Amendment's limitations on carrier liability.

A.

At common law, a ground carrier's liability for goods damaged in transit varied from jurisdiction to jurisdiction but was "virtually unlimited." See Emerson Elec. Supply Co. v. Estes Express Lines Corp., 451 F.3d 179, 182 (3d Cir. 2006). Carriers were subject to "such a diversity of legislative and judicial holding that it was practically impossible for a shipper . . . to know [its potential liability] without considerable investigation and trouble." Adams Express Co. v Croninger, 226 U.S. 491, 505 (1913) (quotation marks omitted). Carriers could, however, generally limit their liability though released value agreements. See First Pa. Bank, N.A. v. E. Airlines, Inc., 731 F.2d 1113, 1116 (3d Cir. 1984).

Congress first comprehensively addressed interstate carrier liability in the Carmack Amendment to the Hepburn Act of 1906. Pub. L. No. 59-337, 34 Stat. 584. The Amendment adopted much of the common law regime, including the ability of carriers to limit their liability by agreement in a shipment's bill of lading. See Adams Express,

4

226 U.S. at 508-12.[1]  Originally applicable only to interstate rail shipments, the Carmack Amendment became applicable to motor carriers by the Motor Carrier Act of 1935.  Pub. L. No. 74-255, 49 Stat. 543.

The Carmack Amendment's operation is relatively straightforward.  The general rule is that an interstate carrier is strictly liable for damages up to "the actual loss or injury to the property caused by (A) the receiving carrier, (B) the delivering carrier, or (C) [certain intermediary carriers]."  49 U.S.C. § 14706(a)(1).  A shipper and carrier can agree to limit the carrier's liability "to a value established by written or electronic declaration of the shipper or by written agreement between the carrier and shipper if that value would be reasonable under the circumstances" in order for the shipper to obtain a reduced rate.  Id. § 14706(c)(1)(A).[2]  Shippers may bring a federal private cause of action directly under the Carmack Amendment against a carrier for damages.  Id. § 14706(d).

The Carmack Amendment struck a compromise between shippers and carriers.  In exchange for making carriers strictly liable for damage to or loss of goods, carriers obtained a uniform, nationwide scheme of liability, with damages limited to actual loss — or less if the shipper and carrier could agree to a lower declared value of the shipment.  See N.Y., New Haven, & Hartford R.R. v. Nothnagle, 346 U.S. 128, 131 (1953); accord Wesley S. Chused, The Evolution of Motor Carrier Liability Under the Carmack Amendment into the 21st Century, 36 Transp. L.J. 177, 210 (2009).  Making carriers strictly liable relieved a shipper of the burden of having to determine which carrier damaged or lost its goods (if the shipper's goods were carried by multiple carriers along a route).  It also eliminated the shipper's

[1] Although not directly relevant to this appeal, an excellent history of the regulation of liability for interstate ground carriers can be found in Emerson Electric Supply, 451 F.3d at 182-87.
[2] In order to limit its liability, the carrier must satisfy several additional conditions.  See Emerson Elec. Supply, 451 F.3d at 186 (listing the conditions).  These conditions are not in dispute in this appeal.

potentially difficult task of proving negligence. See Sec'y of Agric. v. United States, 350 U.S. 162, 173 (1956) (Frankfurter, J., concurring). In return, carriers could more easily predict their potential liability without closely studying the tort law of each state through which a shipment might pass. Carriers' liability was limited to the actual value of the goods shipped — punitive damages were not available. See, e.g., Penn. R.R. v. Int'l Coal Mining Co., 230 U.S. 184, 200 (1913) (noting that "the act provided for compensation, not punishment").

For over one hundred years, the Supreme Court has consistently held that the Carmack Amendment has completely occupied the field of interstate shipping. "Almost every detail of the subject is covered so completely that there can be no rational doubt but that Congress intended to take possession of the subject, and supersede all state regulation with reference to it." Adams Express, 226 U.S. at 505-06. The Court has consistently described the Amendment's preemptive force as exceedingly broad — broad enough to embrace "all losses resulting from any failure to discharge a carrier's duty as to any part of the agreed transportation." Ga., Fla. & Ala. Ry. v. Blish Milling Co., 241 U.S. 190, 196 (1916). State laws are preempted regardless of whether they contradict or supplement Carmack relief. See Charleston & W. Carolina Ry. Co. v. Varnville Furniture Co., 237 U.S. 597, 604 (1915) (holding that a South Carolina law that imposed a $50.00 fine upon carriers that failed to timely report damage was preempted by the Amendment).

The Courts of Appeals have also unanimously held that the Carmack Amendment "preempts all state or common law remedies available to a shipper against a carrier for loss or damage to interstate shipments." N. Am. Van Lines, Inc. v. Pinkerton Sec. Sys., Inc., 89 F.3d 452, 456 (7th Cir. 1996). They have dismissed state and common law claims for breach of contract, negligence, conversion and every other action for loss of or injury to a shipment of goods.[3] Courts of Appeals

---

[3] See Tran Enters., LLC v. DHL Express (USA), Inc., 627 F.3d 1004, 1009 (5th Cir. 2010) (holding that claims for breach of fiduciary duty, breach of contract, and conversion were preempted by the Carmack Amendment); Hall v. N.

6

from the First, Second, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, and Eleventh Circuits have consistently held that the Carmack Amendment is the "exclusive cause of action for interstate-shipping contract [and tort] claims alleging loss or damage to property."  Hall v. N. Am. Van Lines, Inc., 476 F.3d 683, 688-90 (9th Cir. 2007); accord REI Transport, Inc. v. C.H. Robinson Worldwide, Inc., 519 F.3d 693, 697-98 (7th Cir. 2008).[4]

---

Am. Van Lines, Inc., 476 F.3d 683, 688-90 (9th Cir. 2007) (same regarding negligence, fraud, and conversion claims); Smith v. United Parcel Serv., 296 F.3d 1244, 1249 (11th Cir. 2002) (same regarding fraud, negligence, wantonness or willfulness, and outrage claims); Project Hope v. M/V IBN SINA, 250 F.3d 67, 73 n.6 (2d Cir. 2001); Gordon v. United Van Lines, Inc., 130 F.3d 282, 289-90 (7th Cir. 1997) (same regarding breach of contract, willful and wanton misconduct, Illinois Consumer Fraud Act, fraud in the inducement, and fraud in the claims process claims); Rini v. United Van Lines, Inc., 104 F.3d 502, 505-07 (1st Cir. 1997) (same regarding negligence and misrepresentation claims); Shao v. Link Cargo (Taiwan) Ltd., 986 F.2d 700, 705 (4th Cir. 1993) (same regarding negligence and breach of contract claims); Underwriters at Lloyds of London v. N. Am. Van Lines, 890 F.2d 1112, 1121 (10th Cir. 1989) (en banc) (same regarding a negligence claim); Fulton v. Chi., Rock Island & P. R. Co., 481 F.2d 326, 331-32 (8th Cir. 1973) (same regarding a negligence claim); W. D. Lawson & Co. v. Penn Cent. Co., 456 F.2d 419, 421 (6th Cir. 1972) (same regarding a breach of contract claim).

[4] Courts of Appeals have identified a peripheral set of state and common law causes of action that are not preempted by the Carmack Amendment.  See, e.g., UPS Supply Chain Solutions, Inc. v. Megatrux Transp., Inc., 750 F.3d 1282, 1288-95 (11th Cir. 2014) (holding that a claim for attorneys' fees agreed to by contract was not preempted because it does not "enlarge or limit the responsibilities of the carrier for loss of property," and "[e]nforcement of a self-imposed undertaking poses no risk of patchwork regulation or different demands in different jurisdictions"); White v. Mayflower Transit, L.L.C., 543 F.3d 581, 585-86 (9th Cir. 2008) (holding that claims based on conduct apart from the delay, loss, or damage to shipped property would not be preempted);

UPS contends that because First State's property was lost or stolen while it was in transit, all of the common law claims that the Underwriters assert are preempted. We agree. We have already held in passing that state law breach of contract and negligence claims against a carrier for loss of or damage to goods are preempted. See Lewis v. Atlas Van Lines, Inc., 542 F.3d 403, 407-08 (3d Cir. 2008). We reaffirm that holding today. We also conclude that state law conversion claims are likewise preempted, just as the Supreme Court itself has instructed. See Am. Ry. Express Co. v. Levee, 263 U.S. 19, 21 (1923). This is the only result that is consistent with the Amendment's goal of uniformity and its "broad, preemptive terms." Underwriters at Lloyds of London v. N. Am. Van Lines, 890 F.2d 1112, 1116 (10th Cir. 1989) (en banc).

B.

Despite the broad preemptive scope of the Carmack Amendment, the Underwriters argue that their claim for common law conversion should be permitted to proceed on account of the "true conversion" exception. We have held that it would be unfair for a carrier to limit its liability when the carrier's actions involve "intentional destruction or conduct in the nature of theft." Am. Cyanamid Co. v. New Penn Motor Express, Inc., 979 F.2d 310, 315-16 (3d Cir. 1992); accord Tran Enters., LLC v. DHL Express (USA), Inc., 627 F.3d 1004, 1009-10 (5th Cir. 2010); Glickfeld v. Howard Van Lines, Inc., 213 F.2d 723, 727 (9th Cir. 1954). In applying this policy-based exception, courts have exhibited some confusion as to what it is an exception to: the preemptive scope of the Carmack Amendment, or the Amendment's liability limiting provisions. While some courts have spoken of the exception as simply "vitiat[ing] limits on liability," see Deiro v. Am. Airlines, Inc., 816 F.2d 1360, 1366 (9th Cir. 1987), others have noted that an

---

Gordon, 130 F.3d at 289 (holding that claims based on harms apart from the delay, loss, or damage to shipped property are not preempted). The claims that the Underwriters bring do not fall within this set. They seek only to recover for the loss of their goods — claims that lie at the heart of Carmack preemption.

allegation of true conversion[5] may permit a state law conversion action to proceed despite the Carmack Amendment.[6] We hold that the true conversion exception does not detract from the Carmack Amendment's preemptive force and is an exception only to its liability limiting provisions.

Viewing the exception as an exception to Carmack preemption would be contrary to Supreme Court precedent, which explicitly indicates that conversion actions are preempted. In <u>Levee</u>, the plaintiff brought a common law trover[7] suit to recover the full value of an item he had shipped from Texas but which never arrived at its destination in Louisiana. 263 U.S. at 20. The shipper attempted to recover the item's full value despite having agreed to limit the carrier's liability in a bill of lading, as permitted under the Carmack Amendment. <u>Id.</u> The Supreme Court reversed the judgment that the plaintiff had obtained in his state court trover action. <u>Id.</u> at 21. It held:

> [T]he limitation of liability was valid, whatever may be the law of the State in cases within its

---

[5] In order for a conversion to be a "true conversion," the carrier must have "appropriated the property for its own use or gain." <u>Glickfeld</u>, 213 F.2d at 727. The exception does not apply "where the conversion is by third parties or even by its own employees." <u>Id.</u>

[6] A number of federal district courts and state courts have indicated, without much analysis save a perfunctory reference to <u>Glickfeld</u>, that true conversion is an exception to Carmack preemption. See <u>Schultz v. Auld</u>, 848 F. Supp. 1497, 1506 (D. Idaho 1993) (citing <u>Glickfeld</u> for the notion that true conversion is an exception to Carmack preemption); <u>Mlinar v. United Parcel Serv., Inc.</u>, 129 So. 3d 406, 411 (Fla. Dist. Ct. App. 2013) <u>review granted</u>, No. SC14-54, 2014 WL 1800335 (Fla. Apr. 30, 2014) (noting the same, but declining to recognize any exception at all); <u>Dynamic Transit v. Trans Pac. Ventures</u>, 291 P.3d 114, 117 (Nev. 2012) (same as <u>Schultz</u>); <u>Schwartz v. Atlas Van Lines Inc.</u>, 976 P.2d 145, 151-52 (Wash. Ct. App. 1999) (same as <u>Schultz</u>).

[7] Trover is another term for conversion. See <u>Black's Law Dictionary</u> 1739 (10th ed. 2014).

> control. The effect of the stipulation could not have been escaped by suing in trover and laying the failure to deliver as a conversion if that had been done. No more can it be escaped by a state law or decision that a failure to deliver shall establish a conversion unless explained. The law of the United States cannot be evaded by the forms of local practice. . . . The local rule applied as to the burden of proof narrowed the protection that the defendant had secured, and therefore contravened the law.

Id. (citations omitted). The Supreme Court could not have been clearer: the Carmack Amendment preempts state law conversion actions.

The Levee decision also touches on the other reason that this judicially-created exception cannot be an exception to Carmack preemption: so holding would undermine Congress's goal of creating a single uniform, national scheme of carrier liability. Otherwise, carriers would be subject to standards of conversion liability (with varying elements, burdens of proof, remedies, and defenses) that would differ by state. This result is precisely what Congress sought to avoid in enacting the Amendment. "[I]t is evident that Congress intended to adopt a uniform rule and relieve [shipping] contracts from the diverse regulation to which they had been theretofore subject." Adams Express, 226 U.S. at 506. Permitting state law conversion actions to proceed every time it is alleged that a carrier loses or converts a shipper's goods would swallow the uniform liability scheme that Congress created.

Holding that the true conversion exception vitiates the liability limiting provisions of the Carmack Amendment furthers the exception's goals while maintaining the Amendment's uniform liability scheme. The exception still deters a carrier from abusing the liability limiting features of the Amendment (that is, inducing a shipper to limit the carrier's liability so that it can steal the shipper's goods) because it still provides a route to full recovery against a duplicitous carrier. All claims that a carrier stole a shipper's goods would remain governed by one nationwide, federal

standard and would not "enlarge the responsibility of the carrier for loss or at all affect the ground of recovery." Varnville Furniture, 237 U.S. at 603 (quotation marks omitted). We think this is the only way that the true conversion exception can exist while remaining faithful to the Carmack Amendment's goals and Supreme Court precedent.

The true conversion exception has no application to this case. The Underwriters brought only state law claims, which are preempted. They did not bring any claim under the Carmack Amendment, nor do they seek remand to add a Carmack claim. Even if UPS did convert their shipments for its own use, their only remedy would have been to seek relief under the Carmack Amendment and then attempt to vitiate the Amendment's limits on liability by claiming that UPS engaged in true conversion. But the Underwriters, "[a]s masters of the complaint . . . chose not to do so." Caterpillar Inc. v. Williams, 482 U.S. 386, 395 (1987).[8]

## IV.

For the foregoing reasons, we will affirm the order of the District Court dismissing the Underwriters' complaint for failure to state a claim.

---

[8] Because the Underwriters' claim for "true and fraudulent conversion" is preempted, we need not decide whether the plaintiffs needed to plead such claim with particularity in accordance with Federal Rule of Civil Procedure 9(b).